UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY JODWAY ET AL.,

    Plaintiffs,

v.

ORLANS PC ET AL.,

    Defendants.
    _____/

Case No. 17-cv-11223

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT [12], AND GRANTING DEFENDANTS' MOTION FOR SANCTIONS [17]**

## I.    Introduction

Plaintiffs Alaina Zanke-Jodway ("A. Jodway") and Timothy Jodway ("T. Jodway") initiated this action on April 19, 2017. Dkt. No. 1. Plaintiffs (collectively, the "Jodways") are a married couple and are alleging violations of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Collection Practices Act ("MCPA"), MCL 445.251 *et seq. See id.* The Defendants are a law firm, Orlans PC, and two lawyers at that firm, Elizabeth Abood-Carroll and Christene Richter.

On June 13, 2017, the Defendants moved to dismiss the Complaint. Dkt. No. 12. The Jodways responded to the motion on July 6, 2017, and the Defendants

replied in support on July 24, 2017. *See* Dkt. Nos. 15, 16.

Also on July 24, 2017, the Defendants filed a Motion for Sanctions against A. Jodway personally and as counsel for T. Jodway. Dkt. No. 17. A. Jodway responded to that motion on August 8, 2017. Dkt. No. 20. The Defendants have not replied in support of their request for sanctions.

Presently before the Court are the Defendants' Motion to Dismiss the Complaint [12], and the Defendants' Motion for Sanctions [17]. The motions are sufficiently briefed, and pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide the motions without a hearing. For the reasons described herein, the Court will GRANT the Defendants' Motion to Dismiss [12], and will also GRANT the Defendants' Motion for Sanctions [17].

## II. Background

This case concerns the Jodways' mortgage on their second home, which is located at 324 Bay Street, Boyne City, Michigan. No. 1, p. 2 (Pg. ID 2). Litigation involving this mortgage has been ongoing since 2008 and has traversed between federal courts (in both the Western and Eastern Districts of Michigan), bankruptcy courts, and Michigan state courts. Given this long and complicated history, the Court will only discuss those facts necessary to resolve the motions.

In the summer of 2005, Plaintiffs assumed a mortgage on their Boyne City home for $649,000. *Id.* Fifth Third Bank initially held the mortgage and, on January

20, 2011, transferred it to Fifth Third Mortgage Company ("Fifth Third LLC"). *Id.* The Defendants were legal counsel for Fifth Third Bank and Fifth Third LLC in litigation regarding the mortgage. *Id.* Specifically, Orlans PC employed both Abood-Carroll and Richter at all relevant times; and Abood-Carroll litigated the bankruptcy proceedings discussed below, whereas Richter handled judicial foreclosure proceedings. *See* Dkt. No. 12, p. 13 (Pg. ID 552).

A. Procedural History

The first litigation involving the mortgage commenced on September 11, 2008. *See Zanke–Jodway v. Capital Consultants, Inc.*, No. 1:08–cv–930, 2010 WL 776743 (W.D. Mich. March 3, 2010) ("*Jodway I*"). On that date, asserting negligence and fraud claims, the Jodways sued several parties in state court, including Fifth Third LLC. *See id.* On October 3, 2008, that case was removed to the United States District Court for the Western District of Michigan. *See id.* Because the Jodways failed to respond to Fifth Third LLC's summary judgment motion, the court dismissed their claims for failure to prosecute under Federal Rule of Civil Procedure 41(b). *See id.* Several courts, including this one, have held that this decision was an adjudication on the merits as to the formation of the mortgage. *See, e.g., Jodway v. Fifth Third Mortg. Co.*, 557 B.R. 560, 564–66 (E.D. Mich. 2016) ("*Jodway II*"); *see also Fifth Third Mortg. Co. v. Jodway*, Case No. 333926, 2017 WL 5473513, at *4–5 (Mich. Ct. of App. Nov. 14, 2017) ("*Jodway III*").

### 1. T. Jodway's Bankruptcy Proceeding, June 26, 2014

In 2010, after *Jodway I*, Plaintiffs defaulted on the mortgage. *See Jodway III*, 2017 WL 5473513, at *2. Orlans PC therefore initiated a foreclosure by advertisement—on behalf of Fifth Third LLC—in June 2014. Dkt. No. 1, p. 4 (Pg. ID 4). The sale was scheduled for June 27, 2014, but one day prior, T. Jodway filed for bankruptcy. *Id.* His bankruptcy filing, of course, stayed the foreclosure. *Id.*

On March 15, 2015, Defendant Abood-Carroll, acting for Fifth Third LLC, moved for relief from the automatic stay and co-debtor stay in T. Jodway's bankruptcy case. *See* Dkt. No. 12-14. The bankruptcy court granted the motion on April 2, 2015. *See* Dkt. No. 12-16.

Plaintiffs complain of certain conduct by the Defendants in that bankruptcy proceeding. They allege Abood-Carroll filed a Proof of Claim on September 16, 2014 that was false or made with reckless disregard of the truth. Dkt. No. 1, p. 4 (Pg. ID 4). Specifically, they argue the Proof of Claim was false because it represented that Fifth Third LLC has a valid mortgage on the Jodways' property. *Id.* at p. 3 (Pg. ID 3). The mortgage is not valid, Plaintiffs maintain, because A. Jodway's signature was illegally obtained. *Id.*

A. Jodway's signature was obtained in violation of the Equal Credit Opportunity Act ("ECOA"),[1] according to the Plaintiffs, as she was forced to sign

---

[1] The ECOA "makes it 'unlawful for any creditor to discriminate against any

the mortgage although she was not a joint applicant for the loan.[2] *Id.* She further contends that she did not sign the loan application which allegedly served as the basis for Fifth Third Bank's approval of the loan—an application dated August 3, 2005. *Id.* Jodway claims a Fifth Third Bank loan officer falsely declared on May 22, 2009 that, instead, a July 2005 joint application secured the mortgage loan. *Id.*

In addition, Plaintiffs contend the Defendants failed to disclose during the bankruptcy proceedings the August 2005 loan application and May 2009 declaration. *Id.* at p. 5 (Pg. ID 5).

2. Judicial Foreclosure Proceedings, July 15, 2015

On July 15, 2015, Richter initiated judicial foreclosure proceedings in Michigan state court on behalf of Fifth Third LLC. *See* Dkt. No. 12-19, p. 2 (Pg. ID 850). A summons was issued on July 20, 2015. *Id.* The Michigan Court of Appeals decided this foreclosure action on November 14, 2017. *See, generally, Jodway III*, 2017 WL 5473513.

---

applicant, with respect to any aspect of a credit transaction [ ] on the basis of . . . sex or marital status,' among other things." *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 383 (6th Cir. 2014) (alteration in original) (quoting 15 U.S.C. § 1691(a)).

[2] Plaintiffs do not raise an ECOA claim in this litigation, and instead, the Jodways' ECOA argument is under review in the Michigan state courts. *See Jodway III*, 2017 WL 5473513, at *5–6. In any event, this Court has already held that their ECOA argument is barred by res judicata. *See Jodway v. Fifth Third Bank for Fifth Third Bank Mortg. Co.*, Case No. 17-cv-10437, 2017 WL 2351972, at *2–4 (E.D. Mich. May 31, 2017).

The court granted Fifth Third LLC's request for foreclosure as to T. Jodway. *Id.* at *1. With respect to A. Jodway, it concluded that res judicata barred her from challenging the formation of the mortgage. *Id.* at *5. Yet it also held that she was not barred from raising a defense of recoupment based on Fifth Third LLC's alleged violation of the ECOA.[3] The court noted that the statute of limitations had expired on the ECOA claim, and therefore, she could not raise the claim offensively. *Id.* But, she could assert it in the action because she was arguing it defensively and Fifth Third LLC's judicial foreclosure claim was timely. *Id.* The Michigan Court of Appeals then remanded the case to the trial court for resolution of A. Jodway's defensive recoupment argument, given that the trial court had ignored this defense in granting Fifth Third LLC summary disposition. *Id.* As of this writing, the trial court has not issued a ruling on remand.

Here, the Plaintiffs contend that during the judicial foreclosure action Richter violated the FDCPA in two ways. First, Richter submitted the May 2009 declaration in the proceedings, supposedly knowing that it was false. Dkt. No. 1, p. 6 (Pg. ID

---

[3] The Michigan Court of Appeals explained that recoupment enables a defendant " 'to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract.' " *Jodway III*, 2017 WL 5473513, at *5 & n.8 (quoting *Mudge v. Macomb Co.*, 458 Mich. 87, 580 N.W.2d 845, 855 (1998)). The court continued that "recoupment is 'a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.' " *Id.* (quoting *Mudge*, 580 N.W.2d at 855).

6). Second, Richter delayed production of the August 3, 2005 loan application until just days before the summary disposition hearing in the trial court. *Id.* That hearing took place on April 15, 2016. *Id.*; *see also* Dkt. No. 12-21, p. 2 (Pg. ID 874).

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to assess whether a plaintiff has stated a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[E]ven though the complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A court must construe the complaint in favor of a plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *Twombly*, 550 U.S. at 570. But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). To

survive a Rule 12(b)(6) motion, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 553–54). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal citations and quotations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679. (internal citations and quotations omitted).

## IV. Discussion

According to the Plaintiffs, the Defendants violated the FDCPA and MCPA while representing their clients in litigation regarding the mortgage. The Court will find that the Plaintiffs' FDCPA claims are untimely. The Court will therefore decline to assert supplemental jurisdiction over Plaintiffs' MCPA claims. And, accordingly, the Court will grant the Defendants' Motion to Dismiss [12].

In addition, the Defendants requested sanctions against Plaintiff A. Jodway personally and for her representation of T. Jodway [17]. Because A. Jodway has

8

filed numerous meritless claims involving the mortgage, in this Court and in others, the Court finds good cause exists to GRANT Defendants' Motion for Sanctions [17].

    A.    Subject Matter Jurisdiction

The Court will first detail why the Defendants are mistaken to argue that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. The Defendants maintain the *Rooker-Feldman* doctrine applies to Plaintiffs' claims because a finding that the Defendants violated the FDCPA would, in turn, attack the state court ruling regarding foreclosure.

The *Rooker-Feldman* doctrine, however, "does not 'stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.' " *Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 439 (6th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). Instead, it provides that " 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.' " *Wood v. Midland Funding, LLC*, 698 F. App'x 260, 263 (6th Cir. 2017) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). Put another way, "[a] federal court lacks subject-matter jurisdiction when the cause of the alleged injury is the state judgment itself." *Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006)). "Federal jurisdiction is proper," the Supreme Court has said, "if a federal plaintiff presents an

9

independent claim, 'albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.' " *Brown*, 206 F. App'x at 439 (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

Here, the Jodways are not alleging harm from the state court judgment regarding foreclosure, but rather from the Defendants' purportedly unlawful conduct that caused the state court decision in the foreclosure case. *See id.* ("Brown's allegations of fraud in connection with the state court proceedings . . . did not constitute 'complain[ts] of injuries caused by the state court judgments,' because they do not claim that the source of Brown's alleged injury is the foreclosure decree itself." (alteration in original) (internal quotations and citations omitted) (quoting *Exxon Mobil Corp.*, 544 U.S. at 392))). Indeed, "[a]n allegation of unlawfully creating a tainted state-court order is not the same as challenging that order." *Wood*, 698 F. App'x at 263.

Therefore, despite Defendants' protests to the contrary, the *Rooker-Feldman* doctrine does not apply here, and the Court has jurisdiction over Plaintiffs' claims.

B. Motion to Dismiss

Plaintiffs allege the Defendants violated the FDCPA, MCPA, or both, primarily through three separate actions. First, in T. Jodway's Chapter 13 bankruptcy proceedings, Defendant Abood-Carroll filed a Proof of Claim on September 16, 2014. *See* Dkt. No. 12-11. The Proof of Claim allegedly violated the

Acts because it contained assertions that the underlying mortgage was valid. Dkt. No. 1, p. 4 (Pg. ID 4). Specifically, Plaintiffs maintain the mortgage was not valid because A. Jodway's signatures were obtained illegally. *Id.*

Second, again because the mortgage is allegedly void, the Defendants violated the Acts when they moved on March 3, 2015 to lift the automatic stay on behalf of Fifth Third LLC. Dkt. No. 1, pp. 4–5 (Pg. ID 4–5); *see also* Dkt. No. 12-14. This motion was also unlawful, according to the Plaintiffs, because the Defendants purportedly failed to disclose the August 3, 2005 mortgage and that the May 22, 2009 declaration was a false and perjured statement. Dkt. No. 1, p. 5 (Pg. ID 5).

Third, and finally, Defendant Richter supposedly violated the Acts by initiating judicial foreclosure proceedings. *Id.* at p. 6 (Pg. ID 6). Richter is said to have violated the Act through delaying production of the August 3, 2005 loan application until just days before the state court summary disposition hearing. *Id.* The hearing took place on April 15, 2016. *See* Dkt. No. 12-21. In addition, the Jodways argue Richter's conduct was unlawful because her client's knowledge should be imputed to her, and accordingly, she knew that the loan was not valid but continued with foreclosure proceedings in any event. Dkt. No. 1, p. 6 (Pg. ID 6).

The Court will find that Plaintiffs' FDCPA claims lack merit, as these claims are untimely.

Plaintiffs seeking civil remedies under the FDCPA must commence their

11

actions "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). And, ordinarily, " 'when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date.' " *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 274 (6th Cir. 2016) (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258 (6th Cir. 2014)).

All three of the complained of activities occurred more than one year before April 19, 2017, i.e. the date Plaintiffs initiated this action. The dates of these activities, then, demonstrate that the Plaintiffs failed to initiate this action within the time frame allowed by the FDCPA.

To circumvent this restriction, the Jodways argue the Defendants continually violated the FDCPA through reaffirming the validity of the mortgage, e.g. in T. Jodway's bankruptcy action or in the judicial foreclosure action. Yet the Sixth Circuit, on several occasions, has rejected this argument. Indeed, the Jodways allege discreet violations of the FDCPA, and plaintiffs can only recover from such violations where they occur within the statute of limitations period. Here, no discreet violations are asserted within the statute of limitations period.

Discrete acts are separate, actionable violations. *Slorp*, 587 F. App'x at 259. They are typically " 'easy to identify,' " and in the Title VII arena, they include actions like " 'termination, failure to promote, denial of transfer, or refusal to hire.'

" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). To the contrary, hostile work environment claims " 'are different in kind from discrete acts. Their very nature involves repeated conduct.' " *Id.* (quoting *Morgan*, 536 U.S. at 115).

Noting that difference, the Sixth Circuit in *Slorp* observed that "[c]ourts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII," and that the Sixth Circuit in particular "ha[s] never applied the continuing-violation doctrine to an FDCPA claim." *Id.* at 257 (citing *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007)). The court then declined to apply the continuing-violation doctrine to the plaintiff's FDCPA claim.

There, the plaintiff contended the defendants' unlawful activity was their "unfair, misleading, and abusive legal process against Slorp and their concurrent docketing of a fraudulent assignment." *Id.* at 259. The Sixth Circuit was unconvinced. It held that "[t]he defendants did not commit a fresh violation of the FDCPA each time they filed pleadings or memoranda reaffirming the legitimacy of their state-court suit; rather, those were the continuing effects of their initial violation." *Id.* Notably, "[the plaintiff] was not deceived or abused anew each time the defendants reaffirmed their deceptive statements throughout the litigation." *Id.*

Likewise, in *Smith*, the statute of limitations barred a plaintiff's FDCPA

13

claim; he commenced the action too long after the claim had accrued. 658 F. App'x at 273. Specifically, the plaintiff filed suit more than one year after the purported violation—Bank of America's initiation of a foreclosure action regarding a mortgage the bank purportedly did not own. *Id.* The plaintiff maintained that the litigation involved continuing violations because "many of the actions that ma[de] up his claim, including the allegedly fraudulent assignment and Bank of America's subsequent objection at his bankruptcy proceeding, occurred after the filing of the state-court action." *Id.* Relying on *Slorp*, however, the Sixth Circuit determined that "[the bank] did not violate the FDCPA anew merely by asserting its interest in the mortgage throughout the state-court action." *Id.*

*Slorp* and *Smith* foreclose the Jodways' claims. Like the plaintiffs in those cases, the Jodways complain of discreet instances where the Defendants allegedly abused legal process to Plaintiffs' detriment, namely by asserting the validity of the mortgage. Plaintiffs, for example, contend that Defendants' representation in a January 18, 2017 bankruptcy hearing that the mortgage is valid constitutes a continuing violation. Dkt. No. 15, pp. 24–25 (Pg. ID 1070–71). Yet this conduct was simply the result of Defendants' filing the proof of claim, move to lift the automatic stay, or initiation of judicial foreclosure proceedings. *See Slorp*, 587 F. App'x at 259 ("Even if the defendants misrepresented their interests in Slorp's mortgage when they opposed his motion for relief, their opposition to Slorp's motion

14

is not independently actionable because it merely gave 'present effect' to deceptive conduct that had occurred outside the limitations window." (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628, (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5))). And fatal to Plaintiffs' claims is that these actions all occurred outside of the statute of limitations period.

Perhaps realizing their claims lack merit, the Jodways make a threadbare allegation that their claims warrant tolling pursuant to the fraudulent concealment doctrine. As an initial matter, it is unclear whether the Sixth Circuit even permits the tolling of FDCPA claims for fraudulent concealment. *See Smith*, 658 F. App'x at 274 (citing *Fillinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 340–41 (6th Cir. 2015)).

Regardless, Plaintiffs' argument is not well taken. Tolling under the fraudulent concealment doctrine requires well-pleaded allegations that " '(1) [the] defendant[ ] concealed the conduct that constitutes the cause of action; (2) defendant['s] concealment prevented plaintiffs from discovering the cause of action within the limitations period; and (3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action.' " *Guy v. Mercantile Bank Mortg. Co.*, 711 F. App'x 250, 253 (6th Cir. 2017) (quoting *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009)). What is more, " '[a] plaintiff must

plead the factual allegations underlying a claim of fraudulent concealment with particularity.' " *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012)). The Jodways have not adequately alleged the Defendants concealed conduct which in turn precluded them from commencing this action within the limitations period.

Thus, Plaintiffs' FDCPA claims are barred by the statute of limitations. The Court will therefore decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

    C.    Motion for Sanctions

A. Jodway has commenced numerous meritless lawsuits, and therefore, the Court finds good cause to impose Rule 11 sanctions in this case. Indeed, she has initiated several frivolous lawsuits in both federal and state courts against virtually every party associated with the mortgage—first, the mortgagors, Fifth Third Bank and Fifth Third LLC, and now, the mortgagors' lawyers, i.e. the Defendants here. Consequently, the Court will impose sanctions of $5,000 in attorney's fees and costs, and will require that the Jodways obtain leave from a judicial officer should they seek to initiate a new action in federal court regarding the mortgage.

In this Circuit, sanctions under Rule 11 are appropriate where " 'a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension,

modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay.' " *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). The protested conduct is subject to "an objective standard of reasonableness under the circumstances" test. *Id.* (citing *INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)). And a "court is 'expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.' " *Id.* (quoting *INVST Fin. Grp., Inc.*, 815 F.2d at 401).

Rule 11 also imposes procedural requirements. "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c). Rule 11 has a safe-harbor provision which mandates that a motion for sanctions " 'be served under Rule 5' at least twenty-one days before filing it with the court." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (quoting FED. R. CIV. P. 11(c)(2)) (emphasis omitted).

When deciding an award on a motion for sanctions, courts must first consider what is necessary to deter the same or similar conduct, noting that "effective deterrence sometimes requires compensating the victim for attorney fees arising

from abusive litigation." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400 (6th Cir. 2009). Second, courts must analyze whether the movant mitigated its expenses and refrained from expending unnecessary effort in responding to the pleading that violated Rule 11. *Danvers v. Danvers*, 959 F.2d 601, 604 (6th Cir. 1992). Third, courts must assess a party's ability to pay. *Id.*

As the Defendants have requested, the Court will impose the following sanctions: first, the Plaintiffs must pay $5,000 in attorney's fees and costs. Second, if the Plaintiffs seek to bring another lawsuit in federal court regarding the mortgage, they must first obtain leave from an appropriate judicial officer to ensure the claims are not frivolous. Plaintiffs' litigiousness combined with the lack of merit attending their claims demonstrates that they are litigating for improper purposes, including harassment or delay.

The Plaintiffs first filed suit regarding the mortgage in September 2008. *See Jodway I*, 2010 WL 776743. In the almost ten years since, a diverse and substantial number of courts have rejected their mortgage-related claims, largely on the same grounds. And now, finding no new creative way to assert claims against the mortgagors, the Jodways seek to delay foreclosure of the Boyne City property through suing opposing counsel. The Court finds that requiring the Jodways to pay $5,000 in attorney's fees and costs, and to obtain pre-approval of new litigation is necessary to deter them from filing additional baseless claims regarding the

18

mortgage. The Court further concludes that the Defendants did not expend unnecessary effort in responding to the Complaint, and also that the Plaintiffs can pay the sanction imposed here, as demonstrated by their ability to secure the $649,000 mortgage loan.

Therefore, the Court will grant Defendants' Motion for Sanctions. The Plaintiffs, then, must secure leave from an appropriate judicial officer prior to filing a new complaint in federal court regarding the mortgage.

## V. Conclusion

The Defendants moved to dismiss Plaintiffs' Complaint on June 13, 2017, and moved for sanctions against A. Jodway on July 24, 2017. *See* Dkt. Nos. 12, 17. In light of the foregoing, the Court will GRANT Defendants' Motion to Dismiss [12]. The Court will accordingly decline to exercise supplemental jurisdiction over Plaintiffs' MCPA claims.

And, for the reasons detailed above, the Court finds good cause to GRANT Defendants' Motion for Sanctions [17]. Therefore, Plaintiffs must pay $5,000 in attorney's fees and costs, and cannot file suit in federal court regarding the mortgage until they first secure leave from an appropriate judicial officer.

IT IS SO ORDERED.

Dated: March 30, 2018  /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

19

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 30, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk